```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                       AT CHARLESTON
```

**NATASHA HURLEY,**

      Plaintiff,

v.                                          Civil Action No. 2:11-cv-00624

**AVERITT EXPRESS, INC.,**
a Tennessee Corporation and
**JEBB S. WESTERFIELD**

      Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is the defendants' motion for summary judgment as to the plaintiff's claim for punitive damages, filed July 9, 2012.

### I. Background

This case arises from an automobile accident between plaintiff Natasha Hurley and defendant Jebb S. Westerfield. Hurley is a resident of Morgantown, West Virginia. Compl. ¶1. Westerfield is a resident of Louisville, Kentucky. Id. ¶3. Also named as a defendant in the lawsuit is Westerfield's employer at the time of the accident, Averitt Express, Inc. ("Averitt"), a Tennessee corporation with its principal place of business in Cookeville, Tennessee. Id. ¶2.

On June 12, 2011, Hurley was driving her 1997 Saturn L2 eastbound on Interstate 64 in the right lane. Id. ¶5. At the same time, Westerfield was driving a tractor-trailer on Interstate 64 in the left lane. Id. ¶6. While changing lanes to the right, Westerfield's tractor-trailer struck the Saturn and dragged the vehicle, with Hurley in it, 750 feet down the interstate. Id. ¶7.

As a result of the collision, Hurley sustained injuries including traumatic brain injury, post-concussion syndrome, cervical injuries, shoulder injuries, and thoracic injuries. Id. ¶8. She claims damages including past and present medical expenses, past and future lost wages, past and future loss of household services, past and future physical pain and suffering and loss of enjoyment of life, and the total loss of her vehicle. Id. ¶10-11.

Averitt owned the tractor-trailer involved in the accident and had expressly authorized Westerfield to drive it. Id. ¶6. Westerfield, however, did not meet Averitt's minimum requirements for employment as a driver in two respects, relating to experience and prior criminal record. Pl.'s Resp. Opp'n Summ. J. 1. During his deposition, Westerfield testified that at the time of his hiring he did not meet Averitt's requirement that drivers have a minimum of one year experience in the previous

three years.  Id.  Hurley's expert Chris Payne reports that Averitt "[h]ired a driver with no prior experience as per their requirements," but it is unclear whether he means that Westerfield had no experience or merely that he did not have the experience necessary to meet Averitt's requirement.  Pl.'s Resp. Opp'n Summ. J. Ex. B, at 10.  The record is silent as to Westerfield's actual level of experience, and it contains no evidence regarding whether Averitt was aware that Westerfield did not meet the requirement.

Westerfield also testified that he had a domestic violence conviction when hired and that Averitt did not inquire about the conviction despite its policy that drivers not have misdemeanors for theft or violence within the past ten years.  Pl.'s Resp. Opp'n Summ. J. 2.  The record contains no date or further details for the conviction.  Westerfield stated in his deposition that he would have revealed the conviction if asked, but the record contains no suggestion that he made an affirmative misrepresentation or that Averitt knew or should have known about the conviction.  Id. at 2.

At the time of the accident, the tractor-trailer was equipped with a VORAD radar-based system.  Id.  According to Averitt's Safety Orientation Manual, "VORAD is a radar based collision warning system designed to assist the driver in

3

recognizing road hazards while driving. . . . The system has a proven track record and when used properly will reduce the severity and overall number of rear end and right lane change accidents." Pl.'s Resp. Opp'n Summ. J. Ex. C, at 41. Hurley asserts that Averitt did not train Westerfield to use the VORAD system and that no representative of Averitt instructed Westerfield to preserve the VORAD data immediately following the accident. Pl.'s Resp. Opp'n Summ. J. 2-3. Hurley's response, however, contains no description of VORAD's functionality or discussion of how VORAD could have contributed to the prevention or resolution of the collision.

Regarding VORAD's potential use for accident prevention, the Averitt Safety Orientation Manual provides that "[t]he right lane change feature will alert the driver if there is an object in the blind spot." Pl.'s Resp. Opp'n Summ. J. Ex. C, at 41. Hurley's accident reconstruction expert Chris Payne concludes in his report that "Averitt bears responsibility for this crash" due in part to having "[f]ailed to properly train driver in use of VORAD system" and having "[f]ailed to provided [sic] driver with user manual for VORAD." Pl.'s Resp. Opp'n Summ. J. Ex. B, at 10. He states that Westerfield bears responsibility for "fail[ing] to familiarize himself with equipment on the truck that could have

4

helped prevent crashes (VORAD)." Id. at 11. Yet, in his review of Westerfield's deposition, Payne concludes that Westerfield "[k]nows VORAD only alerts to vehicles near the cab of the truck," whereas Hurley's Saturn "was about midway of the trailer." Id. at 9. Thus, Hurley's expert seems to suggest that the use of VORAD would not have been helpful to Westerfield in this instance.

Regarding the preservation of data, Averitt's safety manual provides that "[t]he VORAD system will also aid in accident reconstruction by providing an analysis of all vehicles immediately before the collision." Pl.'s Resp. Opp'n Summ. J. Ex. C, at 41. Payne states that Averitt "could and should have sent VORAD back to manufacturer for download to preserve possible evidence." Further, Payne concludes that the "[d]river contacted Averitt at time of crash and was never advised of procedures involving VORAD or inquired if unit was functional." Pl.'s Resp. Opp'n Summ. J. Ex. B, at 10-11.

On September 15, 2011, Hurley instituted this action with a two-count complaint. Count One alleges that the automobile accident was the result of Westerfield's negligent and reckless misconduct. Compl. ¶14. Count Two alleges "Violation of Statute" and seeks recovery from Westerfield under the general proscription of West Virginia Code § 55-7-9 on the basis that his statutory

violations (unspecified in the complaint and undeveloped in the evidence) caused Hurley's injuries. Id. ¶18-20. Regarding Averitt's liability, Hurley states, "At all material times herein, Defendant Westfield [sic], was an employee and/or agent of Defendant Averitt Express, Inc. and, as such, the corporate defendant is vicariously liable for Defendant Westfield's [sic] conduct." Id. ¶8.

The defendants seek summary judgment as to punitive damages as a matter of law on the grounds that Westerfield's conduct cannot support an award for punitive damages under the "wanton, willful, or reckless" standard observed by the law of West Virginia. See Akire v. First Nat. Bank of Parsons, 197 W.Va. 122, 129, 475 S.E.2d 122, 129 (1996).[1] They also quote language from the Second Restatement of Torts that "reckless disregard of safety" exists when a "risk is substantially greater than that which is necessary to make . . . conduct negligent." Restatement (Second) of Torts § 500 (1965). The defendants emphasize that the "only alleged risk of harm" that Westerfield imposed on Hurley arose from a lane change, and they assert that "there can be no punitive damages because there was no risk of harm substantially

---

[1] Syllabus Point 4 of Akire provides, "In actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive, or vindictive damages; these terms being synonymous." Syl. Pt. 4, id. at 124, 475 S.E.2d at 124 (quoting Syl. Pt. 4, Mayer v. Frobe, 40 W.Va. 246, 246, 22 S.E. 58, 58 (1895)).

6

greater than those risks that naturally flow from a negligent lane change."  Def.'s Mem. Supp. Summ. J. 3.

Hurley responds that her "request for punitive damages is not based exclusively on the improper lane change," but rather "the totality of Averitt's misconduct in hiring an inadequately trained driver with a criminal background and the failure to preserve important evidence."  Pl.'s Resp. Opp'n Summ. J. 3.  Hurley concludes that "a genuine issue of material fact exists with respect to Averitt's reckless misconduct and indifference to the safety of motorists," but Hurley cites no legal authority and provides no explanation for how the conduct meets the punitive damages standard.  Id.

In reply, the defendants contend that Hurley's focus on Averitt's conduct is misplaced, as Hurley's complaint makes no direct negligence claims against Averitt and alleges no wrongdoing by Averitt.  Def.'s Reply Supp. Summ. J. 2.  The defendants also reference their interrogatory that asked for "any act or omission [that] was a breach of duty on the part of these Defendants," to which Hurley answered by describing only the lane change.  Id.  Defendants further argue that Hurley's response to their motion amounts to an improper attempt to amend her complaint and raise new claims, "despite the failure to amend her Complaint or raise

7

these claims during discovery." Id. at 4.  The defendants, nonetheless, assert that Hurley alleges no conduct by Averitt which could support a claim for punitive damages, has failed to show how the conduct goes beyond "garden variety negligence anyway," and has failed to "allege any causal link" between Averitt's actions and harm to Hurley.  Id. at 5.

## II. Governing Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable factfinder could return a verdict for the non-movant.  Id.  The moving party has the burden of "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett,

8

477 U.S. 317, 325 (1986).  If the movant satisfies this burden, the non-movant must respond by showing specific, admissible evidence that establishes the existence of all elements essential to the case.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Absent legislative authorization, a plaintiff in tort wishing to recover punitive damages under West Virginia law must show "gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others."  Smith v. Perry, 178 W.Va. 395, 397, 359 S.E.2d 624, 625 (1987) (quoting Wells v. Smith, 171 W.Va. 97, 102, 297 S.E.2d 872, 877 (1982)).  The conduct must be "extreme and egregious."  Perrine v. E.I. du Pont de Nemours & Co., 225 W.Va. 482, 576, 694 S.E.2d 815, 909 (2010).  An award of punitive damages "is the exception, not the rule, as the level of bad conduct on the part of a defendant must be very high in order to meet the punitive standard."  Id. at 577, 694 S.E.2d at 910.

**III. Defendants' Motion for Partial Summary Judgment**

The court finds that Hurley has not presented evidence sufficient to create a genuine issue of material fact regarding Westerfield's or Averitt's liability for punitive damages. The record contains no evidence that Westerfield's or Averitt's conduct before, during, or after the accident was "wanton, willful, or reckless." The details of the actual collision, taken in the light most favorable to Hurley, reveal no conduct that could satisfy the punitive damage standard, and Hurley all but concedes as much in her response to the defendants' motion.

That Westerfield secured employment with Averitt despite not complying with Averitt's policies regarding experience and criminal background does not indicate a criminal indifference to the safety of others warranting punitive damages. The record does not show that Westerfield was driving the vehicle with a wanton lack of driving experience, and no clear nexus is shown between driver safety and Westerfield's misdemeanor domestic violence conviction. Furthermore, Hurley has presented no evidence that Averitt knew of deficiencies in Westerfield's background.

Finally, the facts surrounding the VORAD system do not support punitive damages. Since Westerfield was neither trained

in the usage of the VORAD system, nor informed that he should preserve its data, his non-use of the VORAD system cannot be said to be wanton, willful, or reckless. While Hurley asserts, and the record suggests, that Averitt's conduct regarding the VORAD system may be more blameworthy, the court, nonetheless, sees no evidence that any such wrongdoing rises here to an "extreme and egregious" level. While the record indicates that Westerfield lacked VORAD training, it also shows that Averitt equipped the truck with a VORAD system and published training materials for the systems, without any assertion by the parties that it was required to do so.

Accordingly, the court concludes that, with respect to the requirements for the imposition of punitive damages, no rational trier of fact could find in favor of Hurley.

### IV. Conclusion

For the foregoing reasons, the court ORDERS that defendants' motion for summary judgment as to punitive damages be, and it hereby is, granted.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: October 3, 2012

John T. Copenhaver, Jr.
United States District Judge